UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:16-CV-00077-TBR

EDWARD RAY WINDHORST                                              PLAINTIFF

v.

SWIFT & STALEY, INC.                                              DEFENDANT

**Memorandum Opinion and Order**

This matter is before the Court upon Plaintiff Edward Windhorst's motion for partial summary judgment on his breach of contract claim against Defendant Swift & Staley, Inc. (SSI). [DN 13.] SSI responded, [DN 14], and Windhorst replied, [DN 15]. Fully briefed, Windhorst's motion is ripe for adjudication. For the following reasons, that motion is GRANTED.

**I. Facts and Procedural History**

For a time, Edward Windhorst was employed as Swift & Staley, Inc.'s Human Resources Manager. [DN 1 at 3.] SSI is a contractor that provides environmental and facilities management services to a number of customers, including the United States Department of Energy. [*Id.*] In 2014, SSI was engaged in the process of submitting a bid to provide such services to the Department of Energy at the Paducah Gaseous Diffusion Plant. [*Id.*; DN 1-1 at 1.] Anticipating that it would be awarded a contract by the Department of Energy, SSI entered into an "Employment Commitment Agreement" with Windhorst. [DN 1-1.] Pursuant to the Agreement, if SSI was awarded the government contract it sought, SSI agreed

to employ Windhorst as its HR Manager for a term of three years. [*Id.* at 1.] The term was to begin on the date that SSI was notified of the contract award. [*Id.*]

Per the Agreement, during that three year period, SSI could terminate Windhorst for only three reasons: death, permanent disability, or for cause. [*Id.* at 2.] The contract defines "cause" as follows:

> The term "cause" as used in this Section shall include but is not limited to the following conduct or events:
>
> a. Dishonest, fraudulent or illegal conduct;
>
> b. Misappropriation of Company property or funds;
>
> c. Conviction of a felony or any other crime that brings the Company into disrepute;
>
> d. Unethical business conduct;
>
> e. Breach of any fiduciary duty to the Company or shareholders;
>
> f. Any conduct that is substantially prejudicial or injurious to the business or good will of the Company[.]

[*Id.*] Additionally, should SSI elect to fire Windhorst, the Agreement requires the company to "provide [Windhorst] with a written notice which states the reason or reasons for termination." [*Id.*]

The Agreement came to fruition in 2015 when the Department of Energy awarded SSI the contract it sought. [DN 1 at 1.] According to Windhorst, SSI's contract with the federal government has a potential value of $177.2 million. [*Id.*] However, the relationship between SSI and Windhorst soon soured, and the company terminated his employment on December 11, 2015. [DN 1-3.] SSI's termination letter stated that Windhorst's employment "is hereby terminated

2

effective immediately." [*Id.* at 1.] The parties agree that SSI's letter did not state the reasons for Windhorst's firing. [DN 18 at 1.] SSI also declined to explain its reasoning to the Kentucky Division of Unemployment Insurance; as a result, Windhorst was awarded unemployment benefits. *See* [DN 13-4.]

Windhorst then filed the instant suit. *See* [DN 1.] He claims that his premature termination by SSI breached his employment contract with the company, violated the Fair Labor Standards Act, and ran afoul of Kentucky's public policy. [*Id.* at 7-9.] In response to Windhorst's first set of interrogatories, SSI stated for the first time its reasons for firing Windhorst. [DN 13-5 at 3-4.] SSI claims that Windhorst was "terminated due to multiple performance failures culminating in breach of his confidentiality and employment agreements." [*Id.* at 3.] Specifically, SSI says that Windhorst: (1) "allowed substantial delays in investigating and responding to significant employee conduct issues"; (2) "disclosed . . . the pay rate for union employees in different jobs who were not similarly situated, which was confidential company information"; (3) "often left work early"; (4) produced a very important employee orientation presentation . . . that was full of errors and targeted to the wrong audience"; and (5) displayed erratic and unreliable behavior during union negotiations in November and December 2015." [*Id.* at 3-4.] "Ultimately," SSI says, Windhorst "was terminated because he failed to perform some of the essential functions of his job . . . and engaged in conduct substantially injurious and prejudicial to the company." [*Id.* at 4.]

Windhorst now moves for summary judgment on his breach of contract claim. [DN 13.] He argues that SSI's admitted failure to list the reasons for his firing in its termination letter constitutes breach of the Employee Commitment Agreement. *See generally* [DN 13-1.] SSI responded, [DN 14], and Windhorst replied, [DN 15.]

## II. Standard of Review

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251-52).

## III. Discussion

The proper "construction and interpretation of a contract . . . are questions of law" for the Court to decide. *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 105 (Ky. 2003) (quoting *First Com. Bank of Prestonsburg v. West*, 55 S.W.3d 829, 835 (Ky. Ct. App. 2000)). The Court's primary object in construing a contract is to give effect to the parties' intent. *See Baker v. Magnum Hunter Prod., Inc.*, 473 S.W.3d 588, 592 (Ky. 2015). The contract must be examined as a whole, giving effect to "every word in it, if possible." *Morganfield Nat'l Bank v. Damien Elder & Sons*, 836 S.W.2d 893, 895 (Ky. 1992). A contract is ambiguous "if a reasonable person would find it susceptible to different or inconsistent interpretations." *Hazard Coal Corp. v. Knight*, 325 S.W.3d 290, 298 (Ky. 2010) (quoting *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. Ct. App. 2002)). Where a contract is unambiguous, the Court looks "only as far as the four corners of the document" to determine the parties' intent. *Abney v. Nationwide Mut. Ins. Co.*, 215 S.W.3d 699, 703 (Ky. 2006) (citation omitted). If not, however, the Court will resort to extrinsic evidence "involving the circumstances surrounding the execution of the contract, the subject matter of the contract, the objects to be accomplished, and the conduct of the parties." *Cantrell Supply*, 94 S.W.3d at 385 (citations omitted).

The Court's first job, then, is to determine whether the particular contractual clause at issue is reasonably susceptible to multiple interpretations. In pertinent part, the Agreement provides:

> For the three (3) year Commitment period, Employee may only be terminated for the following reasons: (i) Employee's death; (ii)

> Employee's permanent disability; or (iii) for cause. In the event the Company elects to exercise its rights under this Section, the Company shall provide Employee with a written notice which states the reason or reasons for termination, and the effective date of termination.

[DN 1-1 at 2.] The parties agree that Windhorst's termination letter was deficient, because it did not "state[] the reason or reasons for [his] termination." [*Id.*] What they do not agree upon is the proper interpretation of the above provision and the effect of the deficient notice.

Windhorst argues that these two sentences should be construed to require SSI to provide a notice, correct in form and substance, to effect a valid for-cause termination. As Windhorst puts it, "if SSI elected to terminate Windhorst pursuant to th[e] 'for cause' provision, SSI had to present the reason to Windhorst at the time of his termination in writing." [DN 13-1 at 3.] For its part, SSI contends that valid notice is not an absolute prerequisite, and that its "failure to state the reasons for [Windhorst's] termination cannot constitute material breach." [DN 14 at 7.]

Admittedly, the Employee Commitment Agreement is not a model of clarity. If the contract read, "To effect a for-cause termination, the Company must provide Employee with a written notice which states the reason or reasons for termination," the Court's task would be much simpler. In essence, this is the construction Windhorst urges. The Court agrees.

To begin, in construing the Agreement, the Court must give effect to "every word in it, if possible." *Morganfield Nat'l Bank*, 836 S.W.2d at 895. SSI has not provided a reading of the contract that would, at the same time, give effect to the

notice requirement and excuse SSI's failure to fulfill that requirement. The Agreement means what it says – if SSI elects to terminate Windhorst for cause, it "shall provide [him] with a written notice which states the reason or reasons for termination." [DN 1-1 at 2.] By failing to do so, SSI breached the notice provision. Because that provision is unambiguous, the Court's inquiry today begins and ends with the plain meaning of the contract.

Nevertheless, SSI argues that it should not be liable to Windhorst because its breach was not a material one. Because the Agreement did not require SSI to give Windhorst advance notice of his termination or afford Windhorst an opportunity to cure his deficient performance, SSI says, it makes no practical difference whether or not the company contemporaneously told Windhorst the reasons for his firing.

As a general rule, courts will enforce provisions in employment contracts requiring the employer to give notice to an employee about to be terminated. *See, e.g., Hodak v. Madison Cap. Mgmt., LLC*, 348 F. App'x 83 (6th Cir. 2009). In *Hodak*, for instance, the employment contract specified that the plaintiff was to receive five days' advance notice of termination, unless the termination was for cause. *Id.* at 92. No notice was required to effect a for-cause termination. *Id.* After Hodak's employer terminated him without notice, the Sixth Circuit held that summary judgment for the employer was inappropriate because questions of fact existed regarding the factual basis for the employer's decision. *Id.* On remand, the district court concluded that the employer had no basis to terminate Hodak for cause, and accordingly granted him summary judgment on his breach of contract

7

claim. *Hodak v. Madison Cap. Mgmt., LLC*, No. 5:07-5-JMH, 2011 WL 1324522, at *9 (E.D. Ky. Apr. 4, 2011). Because the employer gave Hodak no notice, and because it did not terminate him for cause, the district court correctly recognized there was no way the employer could have terminated Hodak's employment without breaching the contract.

Such is the case here. Of course, Windhorst's Employment Commitment Agreement does contain terms different than those at issue in *Hodak*. Unlike Hodak, Windhorst could only be terminated by SSI for cause. Further, if cause existed, no advance notice was required. The notice of termination just had to include an explanation. SSI correctly points out that the Agreement's notice provision is different than cases where advance notice or an opportunity to cure was required. True enough. But those differences do not make SSI's admitted breach any less material. "A material breach exists where a party fails to perform . . . one or more of [the contract's] essential terms or conditions." *Hodak*, 348 F. App'x at 90 (citation and internal quotation marks omitted). Here, the Agreement provided one mechanism and one mechanism only by which SSI could terminate Windhorst's employment, but SSI chose to forge a different path. As the *Hodak* series of cases demonstrates, SSI's failure to follow the prescribed means of termination constitutes a material breach of the Agreement's "essential terms [and] conditions." *Id.*

Finally, SSI contends that Windhorst's motion should be denied because through his allegedly deficient job performance, he was the first to breach the

Employment Commitment Agreement. [DN 14 at 11.] SSI makes this point only in passing and cites authority that is only minimally persuasive. It relies upon a decision from a Maryland intermediate appellate court, wherein the court stated that "[o]nce an employee has breached the contract, he cannot subsequently force the employer to perform except in unusual circumstances." *Storetrax.com v. Gurland*, 895 A.2d 335, 370 (Md. Ct. Spec. App. 2006) (quoting *Chai Mgmt., Inc. v. Leibowitz*, 439 A.2d 34 (Md. Ct. Spec. App. 1982)). But this Court believes *Storetrax*, which involved an employment contract that could be terminated with or without cause, is factually distinguishable from the case at bar. Windhorst may very well have failed to fulfill his responsibilities under the Agreement as SSI's HR Manager. But that failure alone does not excuse SSI from providing Windhorst with the notice of reasons to which he was contractually entitled.

Both parties have expended considerable effort debating whether SSI's proffered reasons for Windhorst's termination constitute cause under the Employee Commitment Agreement, and whether a factual basis exists for SSI's allegations. The parties are still engaged in discovery, and the factual record before the Court is not fully developed. If resolution of Windhorst's motion rested on these questions, summary judgment would likely be premature. But it does not. By failing to fulfill its contractual obligation to Windhorst to tell him why he was being fired, SSI violated the Employment Commitment Agreement.

What remains, then, is the appropriate remedy. On this point, the Agreement is of little help, as it provides only that "should the Company fail to fully

comply with and perform its covenants and obligations under this Agreement, Employee shall . . . be entitled to all rights and remedies that are provided under law." [DN 1-1 at 4.] Additionally, neither party has addressed this issue at any length. In response to discovery, SSI provided reasons as to why it terminated Windhorst's employment. Windhorst, in turn, appears to question the accuracy of those reasons. While this dispute does not affect the fact of SSI's breach it potentially could affect any remedy now sought by Windhorst. The Court believes that further elucidation is needed regarding the rights and remedies of the parties in light of this ruling, and will afford the parties an opportunity to do so as this case progresses.

### IV. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED:

Plaintiff's motion for partial summary judgment [DN 13] is GRANTED.

A **telephonic status conference** shall be held **Friday, April 28** at **10:30 a.m. Central Time**. The Court will place the call to counsel.

CC: Counsel of Record